**FIFTH DIVISION
MCFADDEN, P. J.,
MCMILLIAN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 19, 2019**

# In the Court of Appeals of Georgia

A19A0116. IN THE INTEREST OF A. B., a child.

GOSS, Judge.

On appeal from a juvenile court's adjudication of her daughter as a dependent child, the mother argues pro se that the evidence did not support the judgment and that she was deprived of due process. We find no error and affirm.

We review an order finding a child to be dependent "in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent." (Footnote and punctuation omitted.) *In the Interest of R. D.,* 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018). "[W]e neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the

welfare of a child whose well-being is threatened." (Footnote and punctuation omitted.) Id.

Thus viewed in favor of the juvenile court's judgment, the record shows that on or about June 29, 2017, the mother drove on a suspended license to a hospital emergency room and reported that a man she knew had taken her five-year-old daughter from the child's daycare to his house and/or Walmart to buy a chainsaw before returning the child to the daycare. The daycare's video surveillance system did not provide any corroborating evidence of the mother's account, however. The mother also reported that the child had been sexually assaulted. The police were called, they investigated, and they released the child into the custody of her maternal grandparents, who were at the emergency room. On July 20, 2017, the mother disappeared, leaving the child at the home of her maternal grandparents, who had no legal authority to make medical or other decisions for the child.

On July 31, 2017, the Cobb County Department of Family and Child Services (DFACS) filed a petition alleging that the mother was mentally ill, was abusing illegal drugs, and had brought a number of men into the home she had shared with the child. On August 30, 2017, an evidentiary hearing on the petition was held, at which the mother testified that she had been living at her current address for one day, that

she worked at a strip club, that she was paid in cash, that she had $200 in her bank account, that she had used cocaine within the past two months, and that she had last had a stable living address three years before. The mother also testified that her daughter had told her that she had been sexually assaulted by a man named Joshua, who had been living with the mother and was the person she claimed as having picked the daughter up from the daycare without authorization. On October 11, 2017, a caseworker filed a report stating that the mother's behavior on June 29 included "delusional behaviors" and drug use and that her living arrangements were unsuitable for a young child.

On October 27, 2017, the juvenile court entered an order finding by clear and convincing evidence, including the mother's own admissions to the court, that the mother was mentally unstable, an illegal drug user, and not providing for her daughter; that the child was dependent, as defined in OCGA § 15-11-2 (22), as a result of these conditions; and that the child's best interests would be served by remaining in the custody of the maternal grandmother. This appeal followed. See *In re G. R. B.*, 330 Ga. App. 693, 693 n. 1 (769 SE2d 119) (2015) (explaining the new Juvenile Code's use of the term "dependent" rather than "deprived" child); *In the Interest of S. J.*, 270 Ga. App. 598, 608 (1) (a) (607 SE2d 225) (2004) (an order in a

3

deprivation proceeding deciding temporary custody of a child "is a 'final order,' within the meaning of OCGA § 5-6-34 (a) (1), from which a direct appeal lies.") (footnote omitted).

1. The dissent argues that we lack jurisdiction because the record does not include a filed order authorizing the withdrawal of the mother's counsel. See, e.g., Uniform Juvenile Court Rule 25.2 (withdrawal of counsel "shall be in conformity with Superior Court Rule 4.3"), Uniform Superior Court Rule 4.3 (1) (an attorney of record who wishes to withdraw shall "submit a written request . . . for an order permitting such withdrawal").

The record does not contain any order appointing counsel for the mother. Further, and although counsel appeared at the August 27, 2017 evidentiary hearing on dependency, the mother asked that counsel be appointed only two days later. Likewise, although counsel received a draft order via e-mail on October 11, 2017, counsel noted during the hearing held that same day that the mother had left that hearing and that counsel had told the mother that "today would be the last day that [counsel] would be able to represent her" without a decision from the court as to the mother's representation. The juvenile court responded, "All right."

4

Thereafter, on October 27, 2017, the trial court entered its judgment of dependency, and the mother filed a pro se notice of appeal later that same day. On November 22, 2017, moreover, at a hearing on the mother's motion for post-judgment discovery, the juvenile court asked the mother whether she needed court-appointed counsel. When the mother responded that she had applied for such counsel but that she "prefer[red] to do it on my own right now," the juvenile court confirmed that she wished to "represent [her]self" and granted her permission to do so. On February 9, 2018, the mother filed a second pro se notice of appeal from an order appointing an attorney guardian ad litem. As the dissent notes, counsel reappeared on an evidence list for an April 2018 hearing and at a May 2018 hearing. But two additional orders on the mother's motions, both filed on April 9, 2018, indicated that the mother had been pro se since no later than November 2017, "having stated to the court that she wishe[d] to proceed without the assistance of an attorney."

In short, this record does not contain an order appointing counsel, either before or after the judgment of dependency, and also authorizes the conclusions that the juvenile court gave counsel permission to withdraw before the filing of the mother's timely notice of appeal from that judgment and that the court ratified that decision

5

after confirmation from the mother soon afterward. Under these circumstances, we properly hear the mother's appeal on its merits.

2. The mother first argues that the evidence was not sufficient to show by clear and convincing evidence that her daughter was dependent at the time the juvenile court entered its order. We disagree.

In *In the Interest of H. B.*, 346 Ga. App. 163 (816 SE2d 313) (2018), we recently summarized the law relevant to this mother's assertion as follows:

> Under the most recent version of Georgia's Juvenile Code, [adopted into law in 2013,] the juvenile court may place a minor child in the protective custody of the Department where the State shows, by clear and convincing evidence, that the child is a dependent child. The Juvenile Code defines "dependent child," in relevant part, as a child who "has been abused or neglected and is in need of the protection of the court." OCGA § 15-11-2 (22) (A). "Neglect," in turn, is defined as "the failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A). . . . Consideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential

future dependency. Moreover, a finding of parental unfitness is essential to support an adjudication of present dependency. "Unfitness" in this respect refers to intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. Parental unfitness, like dependency, also must be proved by clear and convincing evidence.

(Citations and punctuation omitted.) Id. at 164-165 (1).

As we have noted, evidence before the juvenile court showed that the mother was mentally and economically unstable, lacked stable housing, abused illegal drugs, and actually abandoned her child. This record was sufficient to support the court's determination that at the time of the hearing, and by clear and convincing evidence, the mother was unfit in that she committed "'intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.'" *In the Interest of H. B.*, 346 Ga. App. at 165 (1), quoting *In the Interest of G. R. B.*, 330 Ga. App. 693, 701 (769 SE2d 119) (2015). This record was also sufficient to support the juvenile court's determination that at the time of the hearing, and by clear and convincing evidence, the child was dependent as a result of the mother's unfitness and abandonment. See *In the Interest*

7

*of T. B. R.*, 224 Ga. App. 470, 473 (1) (b) (480 SE2d 901) (1997) (evidence including that a mother abandoned the children at issue was sufficient to show a lack of parental care or control resulting in deprivation).

3. The mother also argues that she was deprived of due process when the juvenile court failed to abide by the requirements of OCGA §§ 15-11-132 (b),[1] 15-11-

---

[1] OCGA § 15-11-132 (b) provides: "When a child is taken into custody under exceptional circumstances, an affidavit or sworn complaint containing the information previously relayed orally, including telephonically, shall be filed with the clerk of the court the next business day, and a written order shall be issued if not previously issued. The written order shall include the court's findings of fact supporting the necessity for such child's removal from the custody of his or her parent, guardian, or legal custodian in order to safeguard such child's welfare and shall designate a child's legal custodian."

133 (b) (3),[2] 15-11-145 (a),[3] and OCGA § 15-11-200 (a),[4] and that she had

insufficient notice of the August 30 hearing.

As DFACS notes, the statutes cited by the mother apply on their terms only to

cases in which a child is either "taken into custody under exceptional circumstances"

or "removed from his or her home[.]" See OCGA §§ 15-11-123 (b), 15-11-133 (b)

(3), 15-11-145 (a), 15-11-200 (a). Although the new Juvenile Code does not define

either "exceptional circumstances" or "removal" from a home, the case before us

involves either the police's release of the child into the grandparents' custody or the

---

[2] OCGA § 15-11-133 (b) (3) provides: "Upon removing a child from his or her home, a law enforcement officer or duly authorized officer of the court shall . . . Promptly give notice to the court and such child's parents, guardian, or legal custodian that such child is in protective custody, together with a statement of the reasons for taking such child into protective custody."

[3] OCGA § 15-11-145 (a) provides: "If an alleged dependent child is removed from his or her home and is not returned home, the preliminary protective hearing shall be held promptly and not later than 72 hours after such child is placed in foster care; provided, however, that if the 72 hour time frame expires on a weekend or legal holiday, the hearing shall be held on the next day which is not a weekend or legal holiday."

[4] The mother argues a violation of former OCGA § 15-11-58 (b), which was replaced in 2013 by current OCGA § 15-11-200 (a), requiring that "[w]ithin 30 days" of a child's removal from a home, and "at each subsequent review of the disposition order," DFACS "shall submit a written report to the court" including either a case plan or a statement as to why reunification is not appropriate.

9

mother's own leaving of the child at the grandparents' home, with nothing in the record to suggest that the child was ever physically or forcibly "taken" or "removed" from any home by any state actor. Further, the mother has not shown that she was harmed by any of the procedural violations she asserts. For both of these reasons, the mother's assertions lack merit. See *In the Interest of E. G. M.*, 341 Ga. App. 33, 52-53 (3) (798 SE2d 639) (2017) (in the absence of a showing that parents appealing a dependency determination had been harmed by any alleged due process violations, their assertions of error lacked merit).

To the extent the mother asserts that she did not have notice of the August 30 evidentiary hearing, the record shows that although the mother was not served at her former address, perhaps because she no longer lived there, she was represented by counsel and testified at the hearing, and she did not raise any objection as to notice or timeliness at that time. She has thus waived the issue of insufficient service on appeal. *In the Interest of D. R. W.*, 229 Ga. App. 571, 574 (2) (494 SE2d 379) (1997)

(even when mother did not personally appear at a termination hearing, she waived the issue of insufficiency of process or service of process by failing to raise it via counsel at that hearing).

*Judgment affirmed. McMillian, J., concurs. McFadden, P. J., dissents.\**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

# In the Court of Appeals of Georgia

A19A0116. IN THE INTEREST OF A. B., a child.

MCFADDEN, Presiding Judge, dissenting.

I respectfully dissent because we do not have jurisdiction. Appellant filed pro se notices of appeal while still represented by counsel, so her pro se filings are invalid, and we must dismiss the appeal. On remand the juvenile court must determine whether Appellant was denied her constitutional or statutory right to counsel and, if so, whether a remedy is available.

2

"It is well established that this [c]ourt has a solemn duty to inquire into our jurisdiction to review the errors enumerated on appeal, and it is a duty we do not take lightly." *Ford v. Ford*, 347 Ga. App. 233, 233 (818 SE2d 690) (2018) (citation and punctuation omitted)."The proper and timely filing of the notice of appeal is an absolute requirement to confer jurisdiction upon the appellate court." *Smith v. McTaggart*, 343 Ga. App. 144, 145 (806 SE2d 229) (2017) (citation and punctuation omitted). "In the absence of a timely filed notice of appeal, this [c]ourt is without jurisdiction to consider the merits of the case, and the appeal in [the] case must be dismissed." *Parker v. Robinson*, 337 Ga. App. 362, 364 (1) (787 SE2d 317) (2016) (citation and punctuation omitted). It appears from the record in this case that a proper and timely notice of appeal was never filed.

The record shows that after the petition for dependency was filed, the mother submitted a motion for appointment of counsel to represent her, due to financial hardship, pursuant to OCGA § 15-11-103. That code section provides: "A child *and any other party* to a proceeding under this article shall have the right to an attorney at all stages of the proceedings under this article." OCGA § 15-11-103 (a) (emphasis supplied). That code section further provides:

A party other than a child shall be informed of his or her right to an attorney prior to any hearing. A party other than a child shall be given an opportunity to: (1) Obtain and employ an attorney of such party's own choice; (2) Obtain a court appointed attorney if the court determines that such party is an indigent person; or (3) Waive the right to an attorney, provided that such waiver is made knowingly, voluntarily, and on the record.

OCGA § 15-11-103 (g). "In addition, the [Juvenile] Code recognizes that the parent is a 'party' to proceedings involving [her] child." *Sanchez v. Walker County Dept.of Family & Children Svcs.*, 237 Ga. 406, 410 (229 SE2d 66) (1976) (citation omitted). See OCGA § 15-11-2 (52). See also *In the Interest of C. H.*, 343 Ga. App. 1, 9-11 (1) (b) (805 SE2d 637) (2017) (discussing parent's right to counsel in dependency actions).

The record before us does not include an order ruling on the mother's motion for appointment of counsel due to financial hardship. However, counsel was apparently appointed since an attorney appeared with the mother and represented her at the August 30, 2017 evidentiary hearing on the dependency petition. After the hearing, the juvenile court entered an order of disposition noting, among other things, that the mother and her attorney had been present at the hearing. A copy of that order was sent to mother's attorney. The same attorney also appeared and represented the mother at another hearing held on October 11, 2017. After that hearing, the juvenile

4

court entered an order noting that the attorney for the mother had been present at the hearing, and a copy of that order was sent to the mother's attorney. Approximately two weeks after that hearing, on October 27, 2017, the mother filed a pro se notice of appeal.

On November 22, 2017, the mother appeared at a juvenile court hearing without her attorney. Upon inquiry by the court, the mother stated that she had applied for court appointed counsel, but that she would represent herself at that hearing. The record also contains two orders indicating that the mother appeared pro se at two other hearings, in January and February of 2018, although the record before us does not include transcripts of those hearings. The mother then filed another pro se notice of appeal on February 9, 2018.

Thereafter, it appears from the record that the mother's attorney submitted an evidence list for an April 2018 hearing. And on May 24, 2018, the attorney appeared at and represented the mother during another juvenile court hearing. No notices of appeal other than the mother's two previous pro se notices have been filed, and the appeal was subsequently docketed in this court on August 6, 2018.

After the attorney appeared in court and represented the mother, she could only withdraw from such representation by submitting to the juvenile court a written

5

request for an order permitting such withdrawal. See Uniform Juvenile Court Rule 25.2 (withdrawal of counsel "shall be in conformity with Superior Court Rule 4.3") and Uniform Superior Court Rule 4.3 (1) (attorney appearing of record in any pending matter who wishes to withdraw as counsel for any party shall submit a written request to the court for an order permitting such withdrawal). It is well established that "[a] formal withdrawal of counsel cannot be accomplished until after the trial court issues an order permitting the withdrawal. Until such an order properly is made and entered, no formal withdrawal can occur and counsel remains counsel of record." *Tolbert v. Toole*, 296 Ga. 357, 362 (3) (767 SE2d 24) (2014) (citation and punctuation omitted).

In this case, the record contains no written request to withdraw by the mother's attorney and no order from the juvenile court permitting such withdrawal. It is certainly possible, as the majority suggests, "that the juvenile court gave counsel permission to withdraw[.]"

But Georgia has adopted a statutory right to counsel in dependency and termination-of-parental-rights cases. O.C.G.A. §§ 15-11-103 (a); 15-11-262 (j). And in some circumstances, at least in termination cases, federal constitutional "due process calls for the appointment of counsel for indigent parents[.]" *Lassiter v. Dep't*

6

*of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 31–32, 101 S. Ct. 2153, 2162, 68 L. Ed. 2d 640 (1981). So if an indigent parent is to be stripped of representation of counsel, the juvenile court must cut square corners.

As it appears that no formal withdrawal ever occurred and that the mother was still represented by counsel at the time she filed the pro se notices of appeal. "[A] layperson does not have the right to represent [her]self and also be represented by an attorney. [So the mother] cannot attempt to represent herself by filing pro se pleadings, while at the same time she is represented by counsel of record." *Jacobsen v. Haldi*, 210 Ga. App. 817, 819 (1) (437 SE2d 819) (1993) (citations and punctuation omitted). See *Ervin v. Turner*, 291 Ga. App. 719, 723 (7) (662 SE2d 721) (2008) (party could not file pro se motion to set aside a judgment while still represented by counsel). See also *Hernandez-Ramirez v. State*, 345 Ga. App. 402, 403 (812 SE2d 798) (2018) (pro se motion filed by defendant while still represented by counsel was a nullity).

Consequently, the pro se notices of appeal filed by the mother while still represented by counsel were invalid. Absent a proper and timely filed notice of appeal, we are without jurisdiction to consider the appeal and it must be dismissed. See *Parker*, supra. As explained by our Supreme Court, where a "pro se notice of

7

appeal [has] been sent to the Court of Appeals with the record, the appeal would properly [be] dismissed . . . on the ground that the notice of appeal was invalid because [the defendant] was not actually pro se when [s]he filed it[.]" *Tolbert*, supra at 363 (3). Accordingly, the instant appeal must be dismissed.

But our Supreme Court has recognized that, at least in termination cases, federal constitutional due process can, in a proper case, entitle a parent whose right to counsel has been denied to the remedy of out-of-time appellate review. *In Interest of B.R.F*, 299 Ga. 294, 298–99, 788 S.E.2d 416, 419–20 (2016) following *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C.*, 452 U.S. 18, 31–32, 101 S. Ct. 2153, 2162, 68 L. Ed. 2d 640 (1981). That determination must be made, in the first instance, by the juvenile court. *In Interest of B.R.F*, 299 Ga. at 299. That determination will entail a determination whether *Lassiter* is limited to termination cases. But it will also entail consideration, in the first instance, of "the possibility that an indigent parent's statutory right to counsel should be construed as a statutory right to effective counsel at all stages of the proceeding, with a corresponding remedy if counsel is ineffective." Id, 299 Ga. at 300, n. 15.